# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANE ROE AND JOHN ROE, individually, and as next friends of ROBERT ROE, a minor, </br></br>    Plaintiffs, </br></br>v. </br></br>JOHN DOE #1, individually, </br>JOHN DOE #2, individually, </br>JANE DOE, individually, </br>INDEPENDENT SCHOOL DISTRICT </br>NO. 2 OF CLEVELAND COUNTY, </br>OKLAHOMA a/k/a MOORE PUBLIC </br>SCHOOLS, and STATE OF </br>OKLAHOMA, ex rel. DEPARTMENT </br>OF HUMAN SERVICES, </br></br>    Defendants. | Case No. CIV-16-695-M |

## **ORDER**

Before the Court is The Defendant Moore Public School District's (the "District") Motion to Dismiss with Combined Brief in Support, filed July 5, 2016. On July 26, 2016, plaintiffs responded, and on August 3, 2016, the District replied. Also before the Court is the Motion to Dismiss and Brief in Support of Defendant Oklahoma Department of Human Services ("DHS"), filed July 5, 2016. On July 26, 2016, plaintiffs responded, and on August 4, 2016, DHS replied.[1] Based on the parties' submissions, the Court makes its determination.

---

[1] When referred to collectively, the District and DHS will be known as Defendants.

I.  Introduction[2]

On April 14, 2016, Jane and John Roe (collectively "Parents") filed this action, on behalf of their minor son ("Child") (collectively "Plaintiffs"), in the District Court of Cleveland County, State of Oklahoma. On June 21, 2016, the District removed this action to this Court. Child, at all relevant times to this action, attended Sky Ranch Elementary School ("School") within the District, and while being a student within the District, was diagnosed with Autism Spectrum Disorder with accompanying Language Impairment, Developmental Coordination Disorder, ADHD-combined type, and Sensory Processing Disorder. As a result of Child's diagnosis, Child's education is governed by the Individuals with Disabilities Education Act ("IDEA"), and, pursuant to the IDEA, Child is entitled to an Individualized Education Program ("IEP").

In February 2013, during Child's kindergarten year, Parents requested the District to provide Child with a paraprofessional assistant in the classroom to assist with his school work. The District responded to Parents, informing them it needed more information and further testing of Child's disability before it could determine if a paraprofessional could be provided. On August 31, 2013, the District, pursuant to a new IEP plan, determined that the Child would be removed from the general educational environment and sent to a resource room, part-time, for one-on-one instruction. During the IEP meeting, Parents again requested a paraprofessional to assist Child in the classroom, so that Child could remain in the general education setting.

---

[2] The alleged facts set forth are taken from plaintiffs' Petition, which will be referred to as Complaint in this Order.

Parents objected to the new IEP plan, retained counsel, and requested an administrative due process hearing, pursuant to the IDEA. Parents opposed the District's IEP plan for several reasons: "(1) the District had not comprehensively evaluated Child's disabilities and the IEP was too narrow, even after Parents had provided the school, at their expense, a comprehensive neuropsychological report from a clinical neuropsychologist . . . ; (2) that immediately removing Child from the general education environment was not the [Least Restrictive Environment] ("LRE") for Child, and the District had failed to follow the Oklahoma Department of Education's LRE Decision Tree . . . ; and (3) that the school['s] IEP team had failed to consider guidance for accommodation selection in the Oklahoma State Department of Education's Special Education Services Manual." Compl. ¶ 15. The due process hearing for the August 2013 IEP plan was scheduled for January 2014; however, shortly before the meeting, Plaintiffs allege that the District relented and agreed to their demands and IEP plan.

Plaintiffs further allege that on or about March 10, 2014, Parents were summoned by the School's then assistant principal, Mrs. Hendrix, while picking up Child from School, to speak with a DHS welfare investigator. The investigator indicated that she wanted to speak with Parents in a more private location. Plaintiffs allege that the District, through defendant John Doe #2, called DHS and reported suspected abuse or neglect of Child after seeing a bright red mark on Child's face, which was confirmed by a physician to be a rash.[3] Plaintiffs also allege that on April 15, 2014, the District, through John Doe

---

[3] Plaintiffs also allege, on information and belief, that another School administrator, then –assistant principal Mr. Dillbeck, previously called DHS to report suspected abuse or neglect in

#2, called DHS again regarding Child's sibling, who did not attend Child's School, and reported abuse or neglect after seeing a bruise on Child's sibling's face.[4] Once a DHS investigator visited Parents' home, Parents explained that their daughter had fallen in the shower the previous weekend, which had caused the bruise. Further, Plaintiffs allege that Parents offered to allow the investigator to inspect Child's body for bruises too, but the investigator responded that she had already inspected Child's body without any further explanation.

Plaintiffs further allege that on either April 15, or 16, 2014, Child came home from School with his clothes on inside-out. Plaintiffs allege that Child, who is normally very verbal, refused to speak and was withdrawn, and, further, after some prodding from Jane Roe, Child explained that he had been taken into an office at School and had his clothes removed. Plaintiffs allege that Child told Parents there were two people present, a man, believed to be defendant John Doe # 1, and defendant Jane Doe. Plaintiffs allege that Child told Jane Roe that they had taken pictures of him with a cell-phone camera with his clothes removed and touched his genitalia.[5] Plaintiffs allege that Child did not

---

response to another parent's advocacy of a disabled student's rights under the ADA and IDEA. *See* Compl. ¶33. Plaintiffs allege that Dillbeck reported a minor scratch as the suspected abuse and later apologized for making the report and promised not to do it again. *See id.*

[4] Plaintiffs further allege that the education program, within the same District, that Child's sibling attended did not call DHS about the bruise on her face, because the sibling had explained that she had fallen. Plaintiffs also allege that prior to 2013, Child and his siblings had attended other District schools with visible scratches or bruises or other blemishes from injuries sustained from routine childhood activities or illnesses, and the District had not reported suspected abuse or neglect to DHS. *See* Compl. ¶32.

[5] Plaintiffs further allege that they contacted the Oklahoma City Police Department regarding the incident in which Child was searched and after an investigation criminal charges

return to School after this incident, and, that, although Child did not return to school, Child was passed to the next grade level.[6] Plaintiffs further allege that Child has had an intense negative response to reminders of the alleged trauma, which include flashbacks, troubled sleep, irritability, emotional outbursts of anger and anxiety, and, further, Parents have had to move to a different address to allow Child to attend a different school.

Plaintiffs also allege that Child was subjected to bullying behavior, and Parents had previously requested due process hearings to address the issue. Plaintiffs allege that the Child was repeatedly bullied, including being kicked, by at least one peer-student. Plaintiffs allege that several incidents of bullying were reported to school officials who appeared unconcerned and took no action to resolve Child's harassment and bullying by student-peers, teachers, and administrators.

Based on these allegations, Plaintiffs assert the following claims: (Count 1) violation of the First Amendment, pursuant to 42 U.S.C. §§ 1983 and 1988 (against defendants the District, John Doe #1, John Doe #2, and Jane Doe); (Count 2) Fourteenth Amendment Substantive Due Process violation (against all defendants)[7]; (Count 3) violations of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. §§ 1983 and 1988 (against defendants the District, John Doe #1, John Doe #2, and Jane Doe); (Count 4) violations of the Oklahoma Constitution, art. 2, §§ 9 and 30 (against all defendants);

---

were recommended by the detective doing the investigation to the Cleveland County district attorney; however, no charges were filed because the detective could not determine the identities of the persons involved.

[6] Plaintiffs also allege that the School's principal told Jane Roe that he was going to report Child's absences as truancy, but a report was never made.

[7] In their response brief, Plaintiffs concede that they are not asserting a Substantive Due Process violation against DHS; therefore, the Court dismisses Count 2 against DHS.

and (Count 5) violation of the IDEA and Section 504 of the Rehabilitation Act ("§ 504") (against defendants the District, John Doe #1, and John Doe #2). The Defendants now move to dismiss Plaintiffs' claims against them, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

II.     Standard for Dismissal

Regarding the standard for determining whether to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotations and citations omitted). Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (internal quotations

and citations omitted). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Finally, "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

III. Discussion

   A. Constitutional claims pursuant to § 1983

Plaintiffs allege constitutional violations under the First, Fourth, Fifth, and Fourteenth Amendments against the District. Specifically, Plaintiffs allege:

> Defendants, acting under the color of state law, intentionally made false abuse allegations to DHS.
>
> Defendants were motivated to make the false allegations by Plaintiffs having engaged in protected activity under the First and Fourteenth Amendments. The false allegations were reported with the purpose of chilling Plaintiffs' freedom of expression and petition.
>
>    *   *   *   *
>
> Plaintiffs enjoy a right to privacy in the affairs of the family and the rearing of their children guaranteed them under the First, Fifth, and Fourteenth Amendments . . . .
>
> Defendants, in fabricating and reporting allegations of criminal misconduct, knew that their actions would result in an invasion of the privacy of the parents and would cause severe emotional and mental anguish to the Plaintiffs.

7

> Defendants' conduct was malicious, outrageous and shocking to the conscience.
>
> * * * *
>
> Defendants John Doe #1 and Jane Doe lacked probable cause to search and seize Child. Plaintiffs did not consent to the search and seizure of Child.
>
> Defendants' search and seizure of Child without consent and probable cause violated Plaintiff Child's Fourth Amendment rights, including freedom from unreasonable searches, freedom from unreasonable seizures, freedom from unreasonable, unjustified and excessive force, and freedom from deprivations of liberty and property without due process of law.

Compl. ¶¶ 39, 40, 44, 45, 46, 49, and 50.

The Tenth Circuit has held:

> A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.

*Meyers v. Okla. Cty. Bd. of Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998). The District contends that Plaintiffs have failed to allege that any actions by the District's employees were taken as a result of a policy or custom of the District. Plaintiffs contend that they have sufficiently alleged facts demonstrating that the District had a policy of retaliating against parents who advocated for their children, pursuant to their First Amendment rights, and facts demonstrating the District's willful indifference to bullying and physical abuse allegedly suffered by Child, pursuant to the Child's Fourth Amendment rights.

8

Having carefully reviewed Plaintiffs' Complaint, and presuming all of Plaintiffs' factual allegations are true and construing them in the light most favorable to Plaintiffs, the Court finds that, at this stage of the litigation, Plaintiffs have sufficiently alleged their § 1983 claims. Plaintiffs allege that the District, through defendant John Doe #1, contacted DHS and reported potential child neglect on the part of Parents, after Parents actively advocated on Child's behalf for an IEP plan. Plaintiffs further allege that this was not the first time that an employee of the District had taken measures to contact DHS to report child neglect after a parent actively advocated for their child. Additionally, Plaintiffs allege that Parents had previously requested a due process hearing regarding Child being bullied, and no efforts were made to resolve the incident by the District and, further, that school officials seemed unconcerned and took no action to resolve the alleged harassment and bullying suffered by Child. In light of Plaintiffs' allegations, the Court finds that Plaintiffs have alleged sufficient facts which allow the Court to draw the reasonable inference that the District maintains a policy of retaliating against parents who advocate for their children, in violation of the First Amendment, and invading their privacy, by calling DHS when parents do advocate on behalf of their children, in violation of the Fourteenth Amendment Due Process Clause and, further, maintains a policy of being indifferent to reports of bullying, in violation of the Fourth Amendment. Therefore, the Court finds Plaintiffs' § 1983 claims should not be dismissed against the District.

B.   Oklahoma Constitution claims

Plaintiffs allege that Defendants violated article 2, sections 9 and 30 of the Oklahoma Constitution when "[they] search[ed] and seiz[ed] [] Child without consent and probable cause" and subjected Child to excessive force. Compl. ¶ 53. Defendants contend that Plaintiffs' allegations are subject to the provisions of the Oklahoma Governmental Torts Claims Act ("GTCA"), which Plaintiffs have failed to adequately plead. Plaintiffs contend that the GTCA does not apply in this matter, because they are making a specific excessive force claim, pursuant to *Bosh v. Cherokee Cty. Bldg. Auth.*, 305 P.3d 994 (Okla. 2013), in which "the Oklahoma Supreme Court recognized a private cause of action under the Oklahoma Constitution for excessive force claims." Plfs'. Resp. [docket no. 15] at 4.

In *Bosh*, the court found that, notwithstanding the GTCA and, pursuant to the Oklahoma Constitution article 2, section 30, a private right of action for excessive force existed not only for those persons who were incarcerated, but for "arrestees and pre-incarcerated detainees" as well. *Id* at 1001. As for the GTCA, it is well established that the GTCA is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort. *See Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1163 (Okla. 2009). Under the GTCA, a governmental entity is liable for torts for which a private person would be liable, unless the torts are committed outside the course and scope of employment or unless they are committed in bad faith or in a malicious manner. *See id.* Scope of employment is defined as an act where the employee performed the act in good faith within the duties of his office or employment. *See id.* More specifically, an

10

employee is said to be acting within the scope of employment if the employee is doing that which is customary within the particular trade, engaging in work assigned, or doing that which is proper, necessary and usual to accomplish the work assigned. *See id.* The GTCA requires a claim against a political subdivision to be filed in writing within one year of the loss. *See* Okla. Stat. tit. 51, § 156(C)(D). Further, the written notice of the claim must specifically include "the date, time, place and circumstances of the claim," among other details regarding the entity the claim is being filed against and the party pursuing the claim. *Id.* § 156(E).

Having carefully reviewed Plaintiffs' Complaint, and presuming all of Plaintiffs' factual allegations are true and construing them in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have failed to state a claim for violation of the Oklahoma Constitution article 2, sections 9 and 30. Specifically, the Court finds that Plaintiffs' excessive force claim is not the type of claim that is covered under *Bosh*, as *Bosh* is related to actions of law enforcement against arrestees, pre-incarcerated detainees, and incarcerated persons, not students being bullied or stripped searched at school. Plaintiffs failed to bring their Oklahoma Constitutional claims, pursuant to the GTCA, and, therefore, the Court finds that their claims should be dismissed as to Defendants.

C. <u>Violation of the IDEA and § 504 claim</u>

Plaintiffs specifically allege:

> Defendants intentionally discriminated against Plaintiffs based on Child's disability.

> Defendants retaliated against Plaintiffs because Plaintiffs engaged in advocacy for Child's rights under the IDEA and Rehabilitation Act.
>
> Defendants, through their acts and omissions, created a hostile educational environment, and Child has lost an education opportunity.

Compl. ¶¶ 56-58. The District contends that since Plaintiffs have not pled that they exhausted their administrative remedies provided to them under the IDEA and § 504, Plaintiffs' claims must be dismissed. Plaintiffs contend that their claims are excused under these statutes because the remedy that Plaintiffs seek is not available, pursuant to the IDEA.

In *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222 (10th Cir. 2015), the Tenth Circuit stated:

> The IDEA . . . creates a mandatory administrative framework for resolution of disputes over the education of children with disabilities: If a parent has a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," 20 U.S.C. § 1415(b)(6)(A), the IDEA entitles the parent to an "impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency," *id.* § 1415(f)(1)(A). If the parent is unsatisfied with the outcome of the due process hearing, he or she "may appeal such findings and decision to the State educational agency." *Id.* § 1415(g)(1). These administrative remedies must be exhausted before a civil action may be filed in district court under the ADA, Rehabilitation Act, or "other Federal laws protecting the rights of children with disabilities," if the plaintiff "seek[s] relief that is also available under [the IDEA]." *Id.* § 1415(l ).

*Id.* at 1227.

Having carefully reviewed Plaintiffs' Complaint, and presuming all of Plaintiffs' factual allegations are true and construing them in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have failed to exhaust their administrative remedies under the IDEA, and, therefore, the Court is without jurisdiction to hear their claim. Specifically, Plaintiffs contend that since they have only "alleged [] isolated instances of potential physical abuse by District personnel," their claim is out of the realm of the IDEA; however, Plaintiffs have specifically alleged that, "Defendants, through their acts and omissions, created a hostile educational environment, and Child has lost an education opportunity," Compl. ¶ 58, in violation of the IDEA and § 504. Based on Plaintiffs' allegation, the Court finds Plaintiffs are required to submit to the IDEA administrative procedures prior to filing their claim in this Court. *See Padilla ex rel. Padilla v. Sch. Dist. No. 1 in the City and Cty. of Den., Co.*, 233 F.3d 1268, 1274 (10th Cir. 2000) ("In essence the dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required. If not, the claim necessarily falls outside the IDEA's scope, and exhaustion is unnecessary. Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required in order to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem.") (internal citation omitted). Further, the Court finds Plaintiffs have not solely alleged physical injuries in their claim but an educational loss, as well, and that educational loss claim should have been addressed through the IDEA administrative proceedings prior to being

filed in this Court; therefore, the Court dismisses Plaintiffs' violation of the IDEA and § 504 claim for lack of jurisdiction.

IV. Conclusion

Accordingly, the Court GRANTS IN PART AND DENIES IN PART the District's Motion to Dismiss with Combined Brief in Support [docket no. 9] as follows: (1) the Court denies the District's Motion to Dismiss as to Plaintiffs § 1983 claims; and (2) the Court GRANTS the District's Motion to Dismiss as to Plaintiffs' Oklahoma Constitutional claims and claims for violation of the IDEA and § 504 and DISMISSES Plaintiffs' Oklahoma Constitutional claims and claims for violation of the IDEA and § 504 against the District. Further, the Court GRANTS DHS's Motion to Dismiss and Brief in Support [docket no. 10] and DISMISSES DHS from this action.

**IT IS SO ORDERED this 6th day of December, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE